Mandry et al., Apelados, *v.* La Compañía Azucarera del Este et al., Apelantes.

Apelación procedente de la Corte de Distrito de San Juan, Sección 2ª.

No. 822.—Resuelto originalmente en febrero 18, 1913.

Resuelto en reconsideración en abril 4, 1913.

Venta—Pago del Precio—Error de Hecho—Deducción del Importe de una Hipoteca y sus Intereses.—Los demandantes vendieron a la Compañía Azucarera del Este una finca por la cantidad de $138,585.30. Se convino que se deduciría de dicha cantidad el importe de lo que los demandantes resultaran adeudando al Banco Territorial y Agrícola. Según liquidación hecha por el banco, esta deuda ascendía a $54,032.33. Algunos meses después la sociedad compradora canceló la deuda hipotecaria adeudada al banco pagándole $27,643.07, y constituyó una hipoteca mayor sobre la misma finca a favor del banco para garantizar un préstamo que había obtenido. Los demandantes reclaman la devolución de la suma de $26,389.20, más intereses desde octubre 30, 1900, porque lo adeudado al banco en la época en que se hizo la venta era únicamente $27,643.07; se resolvió que aun cuando no se ha demostrado que hubiera fraude por parte de la Compañía Azucarera del Este, el contrato de venta se otorgó con un error de hecho en que incurrieron ambas partes y que la Compañía Azucarera del Este debe pagar a los demandantes la suma de $26,389.20 con intereses al 6 por ciento anual desde el 30 de agosto de 1910, en que se entabló la demanda.

Fraude—Prueba.—La existencia de fraude no se ha probado en el presente caso.

Corporaciones—Socios.—El mero hecho de que algunos socios de una corporación sean también socios de otras, no hace responsable a la corporación, como entidad jurídica, de los actos realizados por uno de sus socios cuando formaba parte de otra corporación.

RECONSIDERACIÓN DE SENTENCIA.

Reconsideración de Sentencia—Fundamentos Alegados por Primera Vez—Corporaciones.—La moción de reconsideración se funda en que la alegación

de la demanda de que la Yabucoa Sugar Company y Toro Fabián y Compañía eran los continuadores de la Compañía Azucarera del Este, no fué impugnada y en que del registro constaba que no se había pagado el precio total de la venta, y que por tanto, los adquirentes posteriores eran responsables de la parte dejada de pagar. Se resolvió en cuanto al primer motivo, que la negación general hecha por el demandado imponía al demandante la obligación de probar todas sus alegaciones y en cuanto al segundo fundamento, que no habiendo sido alegada y discutida en la corte inferior ni ante este tribunal en apelación, no podía alegarse con éxito por primera vez como motivo de reconsideración, aparte de que en el registro no se hizo asiento con respecto a la parte del precio que se dejó de pagar, que pudiera servir de aviso a los adquirentes posteriores.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sres. Alvarez Nava y Domínguez.*

Abogado de los apelados: *Sr. José E. Benedicto.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Al morir Don Cristóbal Vallecillo en el año 1897, su viuda e hijos, estos últimos casi todos menores de edad, encontraron que sobre la hacienda "Mercedita" y otras dos fincas más, pesaba una hipoteca a favor del Banco Territorial y Agrícola, constituída en el año 1895, para responder de sesenta y cinco mil pesos, los que con sus intereses al 9 por ciento, ascendían a ciento diez y ocho mil treinta y dos pesos, cincuenta y dos centavos, que habían de ser pagados en 30 semestres y de los cuales sólo habían sido satisfechos cuatro, hasta el fallecimiento de Don Cristóbal.

No pudiendo los herederos hacer frente a estas deudas y a otras de Don Juan Beltrán y Don Roberto Graham, y siendo apremiados por sus acreedores y habiendo el expresado banco comenzado gestiones para cobrar judicialmente lo que se le debía, los expresados herederos resolvieron vender la hacienda "Mercedita" y otras fincas; y al efecto el día 2 de octubre de 1900 celebraron con Don Rafael Fabián, Don Enrique Delgado, Don Conrado Palau, y otros, un contrato por el cual se comprometieron a vender en el término de un mes la citada hacienda a la sociedad Compañía Azucarera del Este, que dichos señores proyectaban constituir para explo-

tar a la referida "Mercedita" y otras fincas. El precio convenido para la venta se fijó en la suma de $120,000 y £3,709 17s. 3d. de cuya cantidad se deduciría el importe de lo que la Sucesión Vallecillo resulta adeudando al Banco Territorial y Agrícola, ascendente a 90,735 pesos 79 centavos, equivalente a $54,032.27, según liquidación hecha en esa misma fecha. Este cálculo fué hecho por el banco y suministrado a las partes contratantes.

Y en 30 del mismo mes y año, la Sucesión Vallecillo hizo a favor de la Compañía Azucarera del Este la venta definitiva de la hacienda "Mercedita" y de otra propiedad, compuesta de unas 870 cuerdas, por la suma convenida en el contrato, cuyo total equivale a $138,585.30. La escritura expresa que ciertas sumas habían de deducirse y pagarse por la Compañía a diferentes personas incluyendo la deuda pendiente con el banco, siendo todas estas personas acreedores de la Sucesión Vallecillo. La cláusula en que especialmente se hace referencia del pago al banco, es como sigue:

"De esta cantidad (o sea $138,585.30 expresada en el contrato como la causa o precio de la venta) debe deducirse en primer término la suma de $54,032.27 a que monta el crédito hipotecario y los intereses que pesan sobre la primera finca vendida, según liquidación de 30 de septiembre último, y cuya cantidad se reserva la compañía compradora para abonarla al acreedor, o sea al Banco Territorial y Agrícola de esta Isla."

Las otras sumas que se dedujeron se debían a otros acreedores y habían de entregárseles por la compañía compradora.

Algunos meses después de esa compraventa la Compañía Azucarera del Este necesitó dinero para el fomento de la hacienda o plantación "Mercedita" y habiendo acudido en solicitud de él al banco, se negó éste a recibir en garantía una segunda hipoteca por prohibirlo sus reglamentos y sus estatutos, pero consintió en dar la cantidad solicitada mediante la constitución de otra hipoteca en concepto de primera, que comprendiese en su totalidad el nuevo préstamo y el que

aun se adeudaba de los Vallecillo y consiguiente cancelación de ésta.

Este nuevo contrato o hipoteca se celebró finalmente el día 31 de agosto de 1901, y la liquidación que se hizo en julio 30 de 1901, mostraba que la cantidad necesaria para arreglar el crédito hipotecario de Vallecillo era de $27,643.07. En otras palabras, la suma que se hubiera necesitado en octubre de 1900, fecha de la venta para cancelar el crédito, hubiera sido aun menor de $27,643.07 teniendo en cuenta los intereses. Por tanto puede decirse, hablando en términos generales, que en octubre de 1900, en vez de necesitarse la suma de $54,032.27 para cancelar el crédito, solamente era necesaria la mitad de dicha suma.

La hipoteca de Vallecillo, según sus términos, llegaba hasta cierta fecha del año 1910. La demanda en este pleito se estableció en 30 de agosto del 1910, en la que se expresaron sustancialmente los anteriores hechos y en adición a los mismos alegaron los demandantes que los demandados, o algunos de ellos, habían hecho creer de modo fraudulento a los demandantes que la suma que se debía a la compañía en la fecha de la venta era la de $54,000 en vez de ser una de $27,000. La razón por la cual decimos, ''algunos de los demandados,'' es porque la finca ''Mercedita'' fué posteriormente vendida a otras compañías y el pleito se ha establecido contra todos ellos. La alegación de fraude se hizo prácticamente contra la Compañía Azucarera del Este. La corte inferior resolvió que la compañía había sido culpable de fraude y engañado a los demandantes y ordenó que pagara la suma de $26,839.27 a los demandantes, con sus intereses desde el día 30 de octubre de 1900. La suma así adjudicada por la corte, es la diferencia entre los $54,032.27 y la suma que efectivamente pagó la Compañía Azucarera del Este al banco.

No ha sido demostrado por la prueba que la Compañía Azucarera del Este fuera culpable de fraude, pero creemos que las partes otorgaron el contrato de compraventa debido a un error de hecho cometido por dichas partes. Ambas

partes creyeron al parecer que la suma total de $54,032.27 había de pagarse al banco. Los demandados no niegan que la cantidad que solamente se debía al banco en la fecha de la venta eran unos $27,000, pero lo que sí afirman, es que el contrato se hizo en tal forma, porque los demandados esperaban utilizar la suma de $54,000 más o menos, durante todo el término de la hipoteca de Vallecillo. Alegan además que cuando arreglaron la deuda con el banco los $27,000 quedaron incluídos en la nueva hipoteca y que en la operación que se siguió, todavía tenían necesidad de cancelar una obligación de $27,000 con intereses. En verdad creemos que los demandados tenían cierta idea de haber verificado el pago de la suma total de $54,000, pero esto evidentemente no se verificó.

Examinemos el propio contrato. La causa que en el mismo se expresa es la suma de $138,585.30. Los demandados recibieron en cambio todas las fincas hipotecadas y algunas otras. Debe suponerse y en verdad ha sido admitido por los demandados, que el valor real de la finca era la suma fijada en la escritura. Los demandados admiten de igual modo que aunque la transacción en realidad no fué una muy conveniente cuando se hizo, sin embargo, resultó luego un buen negocio. Con el fin al parecer de que no continuara la finca sujeta a ninguna obligación que ellos mismos no pudieran cumplir, retuvieron varias sumas para pagar a varios acreedores incluyendo el Banco Territorial. De aceptar la teoría de los demandados relativa a que los intereses era la verdadera cuestión del contrato, según dijo uno de ellos, sería revestir a la operación de un carácter fraudulento que ya hemos visto no fué lo que ocurrió; en otras palabras, si los demandados tenían la intención de reservar la suma de $27,000 y expresaron que pagaban $138,000 y que solamente entregan el equivalente de $111,000, esto hubiera sido un juego de números por parte de ellos y por consiguiente un fraude. Hubiera habido una gran falta de franqueza al no expresar la causa en la cantidad de $111,000. El contrato de

la compañía demandada era el conservar el dinero para el pago de la deuda al banco y al encontrar que esta deuda era solamente de $27,000 en vez de $54,000, quedaron obligados para con los demandantes por una suma igual a la diferencia. De igual modo si hubieran encontrado que la deuda de Beltrán o Graham era menor que la suma especificada en la escritura, hubieran incurrido en iguales obligaciones para la devolución de la misma a los demandantes. Puede alegarse que los demandados no hubieran celebrado el contrato de haber sabido que inmediatamente quedaban obligados al pago de otros $27,000 a los demandantes; pero considerando el contrato tal como aparece, creemos que puede inferirse de sus propios términos que los demandados trataron de pagar a los demandantes la suma de $138,000 o su equivalente, y al encontrar que solamente la cantidad de $27,000 de los $54,000 reservados era la que se necesitaba, que la suma de $27,000 restantes pertenecía a los demandantes.

Aun cuando puede estimarse que los demandados empezaron a hacer pagos de intereses sobre los $27,000 con motivo de la nueva operación con el banco, cuyos intereses de otro modo no hubieran tenido que pagar, sin embargo, si los $54,000 los hubieran debido en realidad, los demandados hubieran tenido que pagar los $27,000 de dicha suma dentro de la mitad del tiempo hasta donde alcanzaba la hipoteca; pero por otra parte, los demandados hubieran quedado también obligados al pago de otra suma de $27,000 por la otra mitad del término del contrato, la que en realidad nunca pagaron; de modo que, como la suma que se debía al banco y la que la compañía reservó eran prácticamente iguales, el interés que hubieran tenido que pagar los demandados durante el primer término del contrato, está compensado por los intereses que se ahorraron en la última parte del término por el cual se hizo el contrato, debido al hecho de que nunca tuvieron que pagar los segundos $27,000 al banco.

Los demandados promovieron algunas objeciones legales relativas a que la acción era sobre cobro de dinero indebida-

mente satisfecho y el cual debe devolverse, y que la corte inferior en sus consideraciones de hecho fundó el cobro por parte de los demandantes en los artículos 1796 y 1797 del Código Civil. La demanda, sin embargo, no hace alegaciones en tal sentido, pues simplemente es un pleito sobre cobro de dinero que los demandantes alegan que se les debe por los demandados. Si existe algún cambio en la consideración hecha del caso por la corte inferior, éste no podía perjudicar a los demandados por ser incontestables los hechos del caso.

Sin embargo, no creemos, en vista de todas las circunstancias del caso, que el demandado esté obligado a pagar intereses desde octubre de 1900. Los demandantes no están completamente exentos de culpa en este asunto, puesto que era una cuestión muy fácil para ellos el haberse penetrado del estado de su crédito con el banco, y haber exigido anteriormente el pago a la Compañía Azucarera del Este. No hicieron tal cosa, y por tanto creemos que el cobro de intereses debe estar limitado a la fecha de la presentación de la demanda.

Si bien la demanda en este caso se ha dirigido también contra las corporaciones "Yabucoa Sugar Company" y "Toro, Fabián y Compañía," compradora la primera a la Compañía Azucarera del Este de la finca a que se refiere este litigio y la segunda también compradora con pacto de retro, no vencido en la fecha de la reclamación a la "Yabucoa Sugar Company," corporaciones que también han sido condenadas por la corte inferior al pago de la cantidad especificada en la sentencia, sin embargo, el único hecho probado contra ellas de que algunos de sus socios lo fueron también de la Compañía Azucarera del Este que contrató con los demandantes, no es suficiente para que incurran en la condena que se les ha impuesto, porque tales corporaciones no pueden ser responsables, como entidades jurídicas, de los actos que algunos de sus socios puedan haber realizado cuando formaban parte de otra sociedad o corporación, por cuyo motivo deben ser absueltas de la demanda.

Con estas modificaciones debe confirmarse la sentencia.

*Modificada la sentencia.*

Jueces concurrentes: Sres Asociados del Toro y Aldrey.

El Juez Asociado Sr. MacLeary hizo constar lo siguiente: "Yo creo que la sentencia dictada por la corte sentenciadora debe ser confirmada en su totalidad tal como está redactada."

El Juez Presidente Sr. Hernández no tomó parte en la resolución de este caso.

HABIÉNDOSE PRESENTADO con posterioridad una moción de reconsideración de sentencia, el Juez Asociado Sr. Wolf, en abril 4, 1913, emitió la siguiente opinión del tribunal.

Dos son los fundamentos en los cuales basan los apelados la moción sobre reconsideración. El primero hace referencia, en substancia, a que la alegación contenida en la demanda de que la Yabucoa Sugar Company y Toro, Fabián & Co. eran continuadores de la Compañía Azucarera del Esté, nunca fué impugnada formalmente por los apelantes. Sin embargo, los apelantes hicieron una negación general de los hechos contenidos en la demanda, obligando a los demandantes a presentar su prueba; también alegaron específicamente que habían sido compradores y recibieron solamente una parte de la finca, con ciertas limitaciones. Además, el punto concreto fué planteado en una moción de nuevo juicio.

El segundo fundamento para la reconsideración consiste, en que no habiendo pagado el precio de la venta en su totalidad, la apelante, la Compañía Azucarera del Este, cuyo hecho aparecía en la escritura de traspaso, que la inscripción de esa escritura en el registro de la propiedad hizo responsable a los otros apelantes como compradores subsiguientes. En contestación a esto, puede decirse que la escritura no mostraba claramente que una parte de la venta fuera efectivamente retenida, o que hubiera tenido lugar ninguna otra cosa sino la novación. Fué preciso analizar el documento y la ley para

llegar a la conclusión de que la parte del precio de la venta fuese retenida, si es que lo fué. En verdad, el fundamento de la opinión es que al encontrar la Compañía Azucarera del Este que no se debía tanto al banco como dicha compañía creía, quedó en la obligación de pagar a los apelados. Sin embargo, la prueba de la parte demandada, tal como aparece de la exposición del caso, no demuestra que en el registro se hiciera constar la cantidad debida por la Compañía Azucarera como precio aplazado en forma tal que sirviera de notificación a los subsiguientes compradores, los otros demandados en este caso. Además, este criterio con respecto a la anotación del registro ha surgido por primera vez en esta moción para reconsideración. Por la demanda no quedaron informados los demandados de dicha reclamación. El parecer de la corte sentenciadora era completamente distinto y no se hizo ninguna indicación con excepción de la de que dos de los demandados se componían principalmente de los mismos directores de la Compañía Azucarera y eran continuadores de esa última. Ante este tribunal no se hizo semejante proposición hasta la fecha. La moción debe ser negada.

<em>Denegada la reconsideración.</em>

Jueces concurrentes: Sres. Asociados del Toro y Aldrey. Juez disidente: Sr. MacLeary.

El Juez Presidente Sr. Hernández no tomó parte en la resolución de esta moción.